*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# OPINION

No. 04-10-00174-CV

Kenneth Richard **GRIFFITH**,
Appellant

v.

Martha Hightower **GRIFFITH**,
Appellee

From the County Court at Law, Medina County, Texas
Trial Court No. 09-01-5052-CCL
Honorable Vivian Torres, Judge Presiding

Opinion by: Karen Angelini, Justice

Sitting: Karen Angelini, Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice

Delivered and Filed: January 5, 2011

AFFIRMED

This appeal arises out of a divorce proceeding. Kenneth Griffith brings five issues on appeal: (1) whether the trial court erred in denying his special appearance; (2) whether the trial court erred in denying his plea in abatement; (3) whether the trial court erred in denying his motion to dismiss or, in the alternative, motion to stay proceedings under the doctrine of forum non conveniens; (4) whether the trial court erred in dividing property located in Texas and Florida; and (5) whether the trial court erred in refusing to exercise "partial jurisdiction."

**BACKGROUND**

Kenneth and Margaret Griffith married in Houston, Texas, in 1984. They lived in Texas until 1998 when they moved to Kenneth's hometown in Florida. Kenneth's family was in the funeral home business, and in 1978, Kenneth's father sold the family funeral home business to a corporation. In 2004, when the opportunity arose, Kenneth and Margaret purchased the family's funeral home business from that corporation. However, the funeral home did not make any money in 2004, 2005, 2006, or 2007.

As part of her separate property, Martha has a trust, which, in turn, has an ownership interest in a large ranch in Medina County, Texas.[1] In 2004, Martha's mother died, and Martha inherited substantial oil and gas interests. According to Martha, Kenneth paid the mortgage on their Florida home with his salary, while she paid the household expenses with royalties she obtained from her separate oil and gas interests. When Kenneth and Martha's children left home to attend college in Texas, Martha began staying most of the time at her ranch in Texas. The last time Martha slept in her home in Florida was September 2008.

On December 17, 2008, Kenneth filed his petition for dissolution of marriage in Florida. On January 7, 2009, Martha was served with this petition. On January 23, 2009, Martha filed an original petition for divorce in Medina County, Texas. In response, Kenneth filed a special appearance, claiming that Texas could not exercise personal jurisdiction over him. After an evidentiary hearing, the Texas trial court denied his special appearance.

On October 6, 2009, seven days before trial, Kenneth filed a motion to dismiss or, in the alternative, a motion to stay the proceedings under the doctrine of forum non conveniens. Also on October 6, 2009, Kenneth filed a plea in abatement and a counter-petition for divorce. On

---

[1] The Hightower Family Partnership owns the Hightower Ranch. A trust set up for Martha has an ownership interest in the Hightower Family Partnership.

October 13, 2009, the day of trial, the trial court denied Kenneth's plea in abatement and motion to dismiss. Trial was held on October 13th and 14th. Martha called six witnesses, including herself, all of whom are from Texas. Kenneth's only witness was himself. On November 30, 2009, the trial court signed the final decree of divorce. Kenneth now appeals.

### SPECIAL APPEARANCE

In his first issue, Kenneth argues that the trial court erred in denying his special appearance because (1) he is not subject to personal jurisdiction in Texas; and (2) the trial court lacked subject matter jurisdiction under section 6.301 of the Texas Family Code.

*A.   Personal Jurisdiction*

Whether a court has personal jurisdiction over a nonresident is a question of law subject to de novo review. *Am. Type Culture Collection Inc. v. Coleman*, 83 S.W.3d 801, 805-06 (Tex. 2002); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). But, a trial court must frequently resolve questions of fact before determining whether personal jurisdiction over the nonresident exists. *BMC Software*, 83 S.W.3d at 794. Thus, if a trial court signs an order denying a special appearance, and the trial court issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds. *Id.* But, when, as here, the trial court does not issue fact findings, we presume that the trial court resolved all factual disputes in favor of its ruling. *Am. Type Culture Collection*, 83 S.W.3d at 805-06; *BMC Software*, 83 S.W.3d at 795. When the appellate record includes the clerk's and reporter's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *BMC Software*, 83 S.W.3d at 795; *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 445 (Tex. App.—Houston [1st Dist.] 2005, no pet.). However, if the underlying facts are undisputed or otherwise established, we review the trial court's decision de novo. *Preussag*

*Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 113 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.). Here, Kenneth is not challenging the underlying facts relating to his contacts with Texas; instead he is arguing those contacts are not sufficient to confer general jurisdiction. Thus, we review the trial court's decision de novo.

"In a suit for dissolution of a marriage, a trial court may exercise personal jurisdiction over a nonresident respondent if there is any basis consistent with the Texas and United States Constitutions for the exercise of personal jurisdiction." *Stallworth v. Stallworth*, 201 S.W.3d 338, 343 (Tex. App.—Dallas 2006, no pet.); *see also* TEX. FAM. CODE ANN. § 6.305(a)(2) (West 2006). The Texas Supreme Court has held that the Texas long-arm statute extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795. A plaintiff bears the initial burden of pleading allegations sufficient to bring a non-resident defendant within the jurisdiction of Texas. *Am. Type Culture Collection*, 83 S.W.3d at 807. To meet this burden, the plaintiff does not need to detail all the theories or bases of personal jurisdiction upon which she relies; rather, she need only plead allegations sufficient to bring the nonresident defendant within the province of the long-arm statute. *Huynh v. Nguyen*, 180 S.W.3d 608, 619 (Tex. App.—Houston [14th Dist.] 2005, no pet). Once the plaintiff meets this burden, the nonresident defendant then assumes "the burden of negating all bases of jurisdiction in those allegations." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). If, however, the plaintiff fails to meet her initial burden of pleading jurisdictional allegations, then the nonresident defendant can satisfy his burden by simply proving he is a nonresident. *See Oryx Capital Int'l, Inc. v. Sage Apartments, L.L.C.*, 167 S.W.3d 432, 441 (Tex. App.—San Antonio 2005, no pet.). If the nonresident defendant proves

his nonresidency status or otherwise negates personal jurisdiction, then the burden returns to the plaintiff, who must show the trial court has personal jurisdiction over the defendant. *Id.*

Here, Martha did not make any allegations in her petition regarding personal jurisdiction. Thus, at the special appearance hearing, Kenneth had to prove that he was not a resident of Texas, which he did. The burden then shifted back to Martha to show Kenneth was subject to personal jurisdiction in Texas.

Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A nonresident defendant who has "purposefully availed" himself of the benefits and protections of a foreign jurisdiction's laws has sufficient contacts with the forum to confer personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985). Thus, "it is only the defendant's contacts with the forum that count: purposeful availment 'ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person.'" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) (quoting *Burger King*, 471 U.S. at 475). A "defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.* And, although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established "minimum contacts" with the forum state. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex. 1991). However, a defendant should not be subject to a foreign court's jurisdiction based upon "random, isolated, or fortuitous" contacts. *Michiana*, 168 S.W.3d at 785.

Minimum-contacts analysis is further divided into specific personal jurisdiction and general jurisdiction. *Preussag Aktiengesellschaft*, 16 S.W.3d at 114. Here, Martha argues that Kenneth's contacts with Texas constitute general jurisdiction. General jurisdiction is present when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Guardian Royal*, 815 S.W.2d at 228; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990).

At the hearing on Kenneth's special appearance, Kenneth testified that he had lived in Texas for twenty years, from 1978-1998. According to Kenneth, he and Martha married in Houston, Texas, in 1984. They lived in Texas together for fourteen years until they moved to Florida in 1998. Kenneth then testified to the following contacts with Texas that occurred after his move to Florida:

1. During 2003 to 2005, when their son attended New Mexico Military Institute, Kenneth and Martha frequently visited her ranch in Texas.

2. Kenneth personally arranged for internet service to be set up at Martha's ranch in Texas, and the account was under his name;

3. Kenneth arranged for a ranch hand to live at the ranch;

4. Kenneth set up an account in his own name so that the ranch hand would have telephone service;

5. Kenneth met with a contractor at the ranch so that he could obtain a bid for installing a windmill and a solar-powered pump on the ranch;

6. In San Antonio, Texas, on July 18, 2007, Kenneth personally entered into an installment sales contract with Holt Equipment Company and purchased a Skid Steer, a piece of heavy equipment that he took to Martha's ranch;

7. Kenneth made payments on this installment contract, but later allowed the contract to go into default;

8. Kenneth owned, as separate property, a Land Rover, which he kept at the ranch, registered in Texas, and insured in Texas;

9. All of the vehicles titled in both Kenneth and Martha's names were registered and insured in Texas.

10. On November 16, 2007, Kenneth personally purchased an ATV in Hondo, Texas, which was titled by the State of Texas in his name and which listed the ranch as the address;

11. Kenneth purchased two Kawasaki Mules in Texas;

12. On August 7, 2007, Kenneth and Martha purchased a condominium in Austin, Texas;

13. In purchasing the condominium, Kenneth borrowed from a Texas lender, took title to land in Texas, signed a Deed of Trust that was filed in the Travis County deed record office, and purchased title insurance from a Texas insurance company; and

14. Kenneth and Martha hired a CPA in Houston, Texas to prepare their personal tax returns and the tax returns for their business.

Kenneth argues in his brief that he is not subject to personal jurisdiction based on Martha's unilateral actions. However, the above contacts with Texas are not a result of Martha's unilateral actions, but the result of actions taken intentionally and purposefully by Kenneth. We, therefore, hold that Kenneth's contacts with Texas are sufficient to confer general jurisdiction.

Kenneth also argues that Texas exercising personal jurisdiction over him offends notions of fair play and substantial justice. "Once minimum contacts have been established, however, the exercise of jurisdiction will rarely fail to comport with fair play and substantial justice." *In re S.A.V.*, 837 S.W.2d 80, 86 (Tex. 1992). That is, "[w]hen minimum contacts are present, a nonresident must present a compelling case to show that a court exercising jurisdiction is unreasonable." *Small v. Small*, 216 S.W.3d 872, 879 (Tex. App.—Beaumont 2007, pet. denied). In considering whether a defendant has met such a case, a court looks to the following factors: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial

system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guardian Royal*, 815 S.W.2d at 231.

With regard to the first factor, Kenneth argues that it has been a burden to travel from Florida to Texas to attend court proceedings. However, in light of modern transportation and communication, distance alone is ordinarily insufficient to defeat jurisdiction. *Id.* Further, at trial, Kenneth testified that he had come to Texas twice for divorce proceedings, which had cost about $1,000 per trip.

With regard to the second factor, Kenneth argues that Florida is the proper forum and that there are no issues in the Texas case that cannot be addressed in the Florida case. However, Texas does have a valid state interest in litigating ownership rights of Texas trusts; settling title to Texas mineral interests; litigating marital rights in Texas realty; and assigning ownership of vehicles, titled, registered, insured, and located in Texas.

With regard to the third and fourth factors, every witness but Kenneth was from Texas. These six witnesses included Martha; Luke Kellogg, a Texas oil and gas attorney; Martha's brother Harold Hightower; James Tom, a Texas CPA; William Bradley, a Texas forensic CPA; and Martha's Texas divorce attorney, Richard Orsinger. Kenneth called only himself as a witness. And, the only witness from Florida was Kenneth. Kenneth argues in his brief that "[i]t is substantially unfair to require [him] to defend this suit in Texas without the ability to secure the attendance of unwilling witnesses through the issuance of subpoena." However, Kenneth does not state in his brief, nor is there anything in the record, to reflect which unwilling witnesses Kenneth needed to subpoena or what their testimony would have been. Further, given that this case proceeded to judgment while the Florida case at the time of the Texas trial was merely

holding a hearing on temporary orders, the most efficient resolution of this controversy was for Texas to exercise jurisdiction. We, therefore, hold that Texas exercising personal jurisdiction over Kenneth did not offend notions of fair play and substantial justice.

B.      *Residency Requirements under section 6.301 of the Texas Family Code*

Kenneth also argues that his special appearance should have been sustained because the trial court lacked subject matter jurisdiction. Kenneth argues that Martha did not prove at the special appearance hearing that she was a domiciliary of Texas for the preceding six months before she filed suit or that she was a resident of Medina County for the preceding ninety-day period before she filed suit. Section 6.301 of the Family Code states that

> A suit for divorce may not be maintained in this state unless at the time the suit is filed either the petitioner or the respondent has been: (1) a domiciliary of this state for the preceding six-month period; and (2) a resident of the county in which the suit is filed for the preceding 90-day period.

TEX. FAM. CODE ANN. § 6.301 (West 2006). Kenneth claims that the evidence supports a finding that Martha travelled between Texas and Florida for most of 2008.

Martha responds that section 6.301's requirements are not jurisdictional, but rather provide the necessary qualifications for bringing a divorce action. *Stallworth v. Stallworth*, 201 S.W.3d 338, 345 (Tex. App.—Dallas 2006, no pet.). And, because section 6.301's requirements are not jurisdictional, the appropriate remedy is to abate the proceeding, not dismiss the case for lack of jurisdiction. *See Franyutti v. Franyutti*, No. 04-02-00786-CV, 2003 WL 22656879, at *1 (Tex. App.—San Antonio 2003, no pet.). Thus, the trial court did not proceed to trial without subject matter jurisdiction.

Furthermore, section 6.301's requirements of domicile and residence are a fact issue for the trial court to determine, which will not be disturbed unless there is a clear abuse of discretion. *Stallworth*, 201 S.W.3d at 345. Martha testified clearly at trial that she had been domiciled in

Texas for at least six months before filing suit and that she had been a resident of Medina County for at least ninety days before filing suit. In the final decree, the trial court found Martha to be a domiciliary of Texas for the preceding six-month period and a resident of Medina County for the preceding ninety-day period. Kenneth appears to be arguing that the trial court abused its discretion in finding such because Martha traveled between Texas and Florida in 2008. However, "[t]here are no limits on the number of residences that a party may maintain at any one time." *Id.*; *see also McAlister v. McAlister*, 75 S.W.3d 481, 485 (Tex. App.—San Antonio 2002, pet. denied). Thus, there is no abuse of discretion by the trial court in finding that Martha met section 6.301's residency requirements.

## PLEA IN ABATEMENT

Kenneth filed his plea in abatement seven days before trial. It was heard the day of trial, and no evidence was presented in support of the plea in abatement. On appeal, Kenneth argues that because it is undisputed that he filed his divorce proceeding in Florida first, the trial court in Texas was required to stay the Texas proceeding filed by Martha. Thus, Kenneth urges us to apply a de novo review. However, the law is clear that we review the denial of a plea in abatement for abuse of discretion. *In re State Farm Mut. Auto. Ins. Co.*, 192 S.W.3d 897, 901 (Tex. App.—Tyler 2006, orig. proceeding); *Crown Leasing Corp. v. Sims*; 92 S.W.3d 924, 927 (Tex. App.—Texarkana 2002, no pet.); *Project Eng'g USA Corp. v. Gator Hawk, Inc.*, 833 S.W.2d 716, 724 (Tex. App.—Houston [1st Dist.] 1992, no writ).

Further we note that this "first-filed" rule argued by Kenneth relates to the doctrine of dominant jurisdiction, which applies when multiple proceedings are filed in different Texas counties. *See Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988) ("It is well settled that when suit would be proper in more than one county, the court in which suit is first filed

acquires dominant jurisdiction to the exclusion of other courts"); *see also Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001) (orig. proceeding) (citing *Wyatt* for the first-filed rule in a case where there were four proceedings pending in different Texas counties); *In re Sims*, 88 S.W.3d 297, 302 (Tex. App.—San Antonio 2002, orig. proceeding) ("As a general rule, when suit would be proper in more than one county, the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other courts."). This doctrine of dominant jurisdiction, however, does not apply to suits pending in other states. *See Ex parte Jabara*, 556 S.W.2d 592, 596 (Tex. Civ. App.—Dallas 1977, orig. proceeding) ("We conclude that the doctrine of dominant jurisdiction does not apply to suits pending in other states. Texas courts may recognize prior proceedings in other states as a matter of comity, but pendency of a proceeding in another state does not oust the jurisdiction of Texas courts to entertain the same controversy."). Rather, when an action is pending in another state, we apply the doctrine of comity, which, while not a constitutional obligation, is a "principle of mutual convenience whereby one state or jurisdiction will give effect to the laws and judicial decisions of another." *In re AutoNation, Inc.*, 228 S.W.3d 663, 670 (Tex. 2007) (orig. proceeding). Under the doctrine of comity, a Texas court would *usually* stay its proceeding pending adjudication of the first filed suit pending in another state. *See id.*; *VE Corp. v. Ernst & Young*, 860 S.W.2d 83, 84 (Tex. 1993) (per curiam). However, "[i]t is well settled that *the mere pendency of a prior suit in one state* cannot be pleaded in abatement or in bar to a subsequent suit in another, even though both suits are between the same parties and involve the same subject matter." *In re State Farm*, 192 S.W.3d at 900 (emphasis added). The reason for this rule is that "every state is entirely sovereign and unrestricted in its powers, whether legislative, judicial, or executive"; therefore, each state "does not acknowledge the right of any other state to hinder its own sovereign acts or proceedings." *Id.* at 901. Thus, "[c]omity is

not a matter of right." *Nowell v. Nowell*, 408 S.W.2d 550, 553 (Tex. Civ. App.—Dallas 1966, writ dism'd). "The doctrine does not stand boldly clad in the armor of unyielding obedience but is rather arrayed in vestments of persuasion." *Id.* "Being voluntary and not obligatory, the application of comity vests in the sound discretion of the tribunal of the forum." *Id.*; *see also In re State Farm*, 192 S.W.3d at 901 (explaining that an appellate court reviews a trial court's decision regarding an issue of comity for abuse of discretion).

In determining whether a trial court abused its discretion, we look to the two pending actions. *In re State Farm*, 192 S.W.3d at 901. To obtain a stay of the later action, it is *generally* necessary for the petitioner to show that the two suits involve the same cause of action, concern the same subject matter, involve the same issues, and seek the same relief. *Id.* Here, the Texas and Florida divorce proceedings involved the same parties and subject matter. However, while "the pendency of a prior suit involving the same parties and subject matter strongly urges the court of a local forum to stay the proceedings pending determination of the prior suit," "the rule is not mandatory upon the court nor is it a matter of right to the litigant." *Nowell*, 408 S.W.2d at 553. "It is, after all, a matter resting within the sound discretion of the court." *Id.*

A trial court can also consider additional factors, which include but are not limited to the following: (1) which action was filed first; (2) whether the parties are the same in both actions; and (3) the effect of a judgment in the later action on any order or judgment entered in the prior action. *In re State Farm*, 192 S.W.3d at 901. Here, the Florida action was filed first and the parties are the same in both actions. However, there is no evidence that the trial court's judgment in this Texas case affected any order or judgment by the Florida court.

Additionally, the trial court can consider uncertainty as to the amount of time that might pass before the other proceeding concludes, or "what effects an abated trial would have on the

parties before the court or to the orderly control of the court's docket." *In re Estates of Garcia-Chapa*, 33 S.W.3d 859, 863 (Tex. App.—Corpus Christi 2000, no pet.). Before trial, the trial court had a telephone conversation with the judge presiding over the Florida action. The trial court stated that the parties' attorneys with respect to the Florida case were present for the discussion and that the discussion concerned filing timelines and procedural timelines. The discussion was not transcribed, is not part of the appellate record, and no objection was made regarding the lack of a record. Also during this pretrial hearing, Kenneth's attorney stated that the Florida proceedings had progressed only to the point that the Florida court had scheduled a preliminary hearing for the following day on temporary spousal support and interim attorney's fees. Thus, while the Texas case was ready to proceed to trial, the Florida case was still merely proceeding with preliminary hearings.

Further, while Kenneth emphasizes that most of the community property is located in Florida, he ignores the fact that the majority of the marital estate consisted of a house in Florida in foreclosure and a funeral-home business not making enough profit to even pay Kenneth a salary. In contrast, Martha's separate property is vast and consists of complicated mineral interests and testamentary trusts. The trial court noted that Texas has an interest in its citizens having "their matters decided by a Texas court, applying Texas law."

Finally, we note that the trial court was presented with the plea in abatement on the day of trial, and no evidence was presented in support of the plea. The trial court had held an evidentiary hearing on Kenneth's special appearance, but that record was focused on Kenneth's contacts with Texas. Given the facts of this case, we find no abuse of discretion by the trial court in denying Kenneth's plea in abatement.

## FORUM NON CONVENIENS

Kenneth next argues that the trial court abused its discretion in denying his motion to stay the Texas proceeding under the doctrine of forum non conveniens. We review a trial court's refusal to dismiss on forum non conveniens grounds for abuse of discretion. *In re ENSCO Offshore Intern. Co.*, 311 S.W.3d 921, 923 (Tex. 2010) (orig. proceeding) (per curiam); *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 679 (Tex. 2007) (orig. proceeding).

Kenneth argues that section 71.051(b) of the Texas Civil Practice and Remedies Code is applicable to this case. Section 71.051(b) provides the following,

> If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action to which this section applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action.

TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b) (West 2008). Section 71.051(b) also requires a trial to consider the following factors:

(1) an alternate forum exists in which the claim or action may be tried;

(2) the alternate forum provides an adequate remedy;

(3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;

(4) the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;

(5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and

(6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.

*Id.* The word "shall" in the statute "requires dismissal of the claim or action if the statutory factors weigh in favor of the claim or action being more properly heard in a forum outside Texas." *In re ENSCO*, 311 S.W.3d at 924. And, in the trial court, the "defendant generally bears the burden of persuasion on all elements of the forum non conveniens analysis." *Lee v. Na*, 198 S.W.3d 492, 495 (Tex. App.—Dallas 2006, no pet.).

Martha responds that (1) section 71.051(b) applies only to actions for personal injury or wrongful death, noting that chapter 71 is clearly titled "Wrongful Death; Survival; Injuries Occurring Out of State"; and (2) section 71.051(b) does not apply when the plaintiff is a legal resident, noting that section 71.051(e) states a "court may not stay or dismiss a plaintiff's claim under subsection (b) if the plaintiff is a legal resident of this state." TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(e) (West 2008). As noted previously, Martha testified she is a resident of Texas, and the trial court found such. Thus, section 71.051(b) does not apply to this case.

The Dallas Court of Appeals has applied the common law doctrine of forum non conveniens in a divorce case:

> Under the equitable doctrine of forum non conveniens, a trial court may decline to impose an inconvenient jurisdiction on a litigant. However, to dismiss a case based on forum non conveniens, the trial court must determine that, for the convenience of the litigants and witnesses and in the interest of justice, the action should be pursued in another forum. The trial court should consider a number of private and public factors in making this determination, including the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; the enforceability of any judgment entered; the burden imposed upon the citizens of the state and on the trial court; and the general interest in having localized controversies decided in the jurisdiction in which they arose. The defendant generally bears the burden of persuasion on all elements of the forum non conveniens analysis.

*Lee v. Na*, 198 S.W.3d 492, 495 (Tex. App.—Dallas 2006, no pet.) (citations omitted).

As noted previously, every witness except Kenneth was from Texas. Further, Kenneth testified that he had had to make two trips to Texas for the proceedings and that each trip cost about $1000. Further, Martha's witnesses testified about complex Texas testamentary trusts and mineral interests. Given this record, we find no abuse of discretion by the trial court.

### DIVIDING PROPERTY IN FLORIDA AND PARTIAL JURISDICTION

In his fourth and fifth issues, which he argues together in his brief, Kenneth maintains that the trial court erred in dividing community property located in Florida and that the trial court should have just exercised partial jurisdiction over the property located in Texas. However, "[t]here is ample authority for the proposition that a trial court may require parties over whom it has in personam jurisdiction to execute a conveyance of real estate located in another state." *Dankowski v. Dankowski*, 922 S.W.2d 298, 303 (Tex. App.—Fort Worth 1996, writ denied); *Franyutti v. Franyutti*, No. 04-02-00786-CV, 2003 WL 22656879, at \*5 (Tex. App.—San Antonio 2003, no pet.); *see also Mason v. Mason*, 321 S.W.3d 178, 180-81 (Tex. App.— Houston [1st Dist.] 2010, no pet. h.) (explaining that court may grant a divorce to a Texas resident but may not divide community property if it lacks personal jurisdiction over the nonresident spouse). In so doing, "[t]he trial court can consider the existence and value of such realty in dividing the community property of the parties and, in the exercise of its equitable powers, order one party to execute [the] conveyance[.]" *In re Read*, 634 S.W.2d 343, 348-49 (Tex. App.—Amarillo 1982, writ dism'd); *Franyutti*, 2003 WL 22656879, at \*5; *see also In re Glaze*, 605 S.W.2d 721, 724 (Tex. Civ. App.—Amarillo 1980, no writ) (explaining that while a Texas court does not have, and cannot acquire, in rem jurisdiction over real estate lying outside Texas, it can, if it has personal jurisdiction over the nonresident, order one party to execute a conveyance of the out-of-state property to the other party).

Furthermore, section 7.002 of the Texas Family Code requires the trial court to order a division of real and personal property "wherever situated" in a manner that the court deems just and right, including "property that was acquired by either spouse while domiciled in another state and that would have been community property if the spouse who acquired the property had been domiciled in this state at the time of the acquisition." TEX. FAM. CODE ANN. § 7.002(a) (West 2006). Thus, we hold the trial court did not err in dividing community property located in Florida.

Kenneth also argues that the trial court should have exercised partial jurisdiction and cites to section 6.308 of the Family Code, which provides the following:

> (a) A court in which a suit for dissolution of a marriage is filed may exercise its jurisdiction over those portions of the suit for which it has authority.
>
> (b) The court's authority to resolve the issues in controversy between the parties may be restricted because the court lacks:
>
>> (1) the required personal jurisdiction over a nonresident party in a suit for dissolution of the marriage;
>>
>> (2) the required jurisdiction under Chapter 152;[2] or
>>
>> (3) the required jurisdiction under Chapter 159.[3]

TEX. FAM. CODE ANN. § 6.308 (West 2006). Thus, section 6.308 would apply here if the trial court did not have personal jurisdiction over Kenneth. However, as we have held that the trial court did have personal jurisdiction over Kenneth, section 6.308 is not applicable.

## CONCLUSION

We affirm the trial court's judgment.

Karen Angelini, Justice

---

[2] Chapter 152 relates to the Uniform Child Custody Jurisdiction and Enforcement Act and is not applicable here.
[3] Chapter 159 relates to the Uniform Interstate Family Support Act and is not applicable here.