**ASHTON GROVE L.C., W. Dow Hamm III Corp., Ashton Grove Master Association, Inc., Ashton Grove Estates Section 1 Community Association, Inc., William Dow Hamm, III, and William Dow Hamm, Jr., Appellants,**

v.

**JACKSON WALKER L.L.P., Appellee.**

No. 05–09–01538–CV.

Court of Appeals of Texas, Dallas.

April 18, 2012.

Denice Smith, Law Office of Denice Smith, Houston, TX, Kirk L. Pittard, Kelly, Durham & Pittard, LLP, Brian P. Lauten, The Lauten Firm, P.C., Dallas, TX, for Appellants.

William Ross Forbes, Jr., Kurt Schwarz, Jackson Walker, L.L.P., Dallas, TX, for Appellee

Before Justices BRIDGES, O'NEILL, and FILLMORE.

## OPINION

Opinion By Justice O'NEILL.

Appellants Ashton Grove L.C., W. Dow Hamm III Corp., Ashton Grove Master Association Inc., Ashton Grove Estates Section 1 Community Association, Inc., William Dow Hamm, III, and William Dow Hamm, Jr. appeal the trial court's grant of summary judgment in favor of appellee Jackson Walker, L.L.P. In three issues, appellants argue (1) the trial court erred by refusing to abate the Dallas County case because Oklahoma acquired dominant jurisdiction, (2) the trial court improperly granted summary judgment because Jackson Walker failed to establish as a matter of law the reasonableness of attorneys' fees awarded, and (3) the trial court abused its discretion by denying their motion for continuance. We affirm in part and reverse and remand in part for further proceedings.

## Background

Appellants run a family business involved in the development of residential subdivisions. They hired Jackson Walker in June 2008 to handle litigation involving a residential subdivision in Oklahoma. Appellants signed an engagement contract that stated Jackson Walker "expect[s] our total legal fees in these engagement[s] to exceed $500,000.00, depending on the circumstances, strategy, and events in the cases." Appellants paid Jackson Walker $648,706.56 for work performed between June 27, 2008 and August 26, 2008. The total amount Jackson Walker billed for its services between June and November 2008 was over $1.1 million.

Less than four months after being hired and receiving $648,706.56 in fees, Jackson Walker filed a motion to withdraw as counsel in the Oklahoma lawsuit. Its motion was granted. At the time of its withdrawal in November 2008, appellants allegedly owed Jackson Walker $433,561.29 in fees. Jackson Walker continued its efforts to recover its fees and sent a formal demand letter for all outstanding fees under the contract on May 12, 2009.

Instead of responding to the demand letter, appellants filed a legal malpractice suit in Oklahoma on May 22, 2009. Jackson Walker filed its petition in Dallas County for breach of contract, unjust enrichment, and attorneys' fees on June 10, 2009. An Oklahoma firm responded to Jackson Walker's lawsuit by filing a motion to abate or stay the Dallas County proceedings, a plea to the jurisdiction, a verified denial, and special exceptions.

Shortly thereafter, Jackson Walker filed a motion for summary judgment in the Dallas County lawsuit. Appellants' Oklahoma attorney responded to the motion, filed a motion for continuance of the summary judgment hearing, and filed a motion to withdraw as counsel. The trial court granted the motion for continuance and the motion to withdraw. The court's order provided sixteen days for appellants to find a new lawyer. The court held a hearing on September 4, 2009 despite appellants failure to obtain new counsel. Appellants' motion to abate the Dallas County case because of pending litigation in Oklahoma was denied. The trial court granted Jackson Walker's motion for summary judgment for the recovery of $433,561.29 in fees based on its breach of contract claim. This appeal followed.

### Motion to Abate or Stay Proceedings Because of Oklahoma Litigation

In their first issue, appellants argue the trial court erred by denying their motion to abate or stay the Dallas County proceedings because Oklahoma acquired dominant jurisdiction when they filed their legal malpractice suit against Jackson Walker. Jackson Walker responds the trial court did not err because the lawsuits involve different controversies, and the doctrine of dominant jurisdiction only applies to actions filed in different counties within the state, not when actions are filed in different states.

■ We review the trial court's denial of a motion to abate or stay under an abuse of discretion standard. *Lee v. GST Transport Sys., LP*, 334 S.W.3d 16, 19 (Tex.App.-Dallas 2008, pet. denied). The trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Id.*

■ As a general rule, when cases involving the same subject matter are brought in different courts, the court with the first-filed case has dominant jurisdiction and should proceed, and the other case should be abated. *Id.; see also Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex.2001). However, the doctrine of dominant jurisdiction does not apply to suits pending in other states. *Griffith v. Griffith*, 341 S.W.3d 43, 54 (Tex.App.-San Antonio 2011, no pet.); *Ex parte Jabara*, 556 S.W.2d 592, 596 (Tex.App.-Dallas 1977, orig. proceeding) ("We conclude the doctrine of dominant jurisdiction does not apply to suits pending in other states."). Rather, when an action is pending in another state, we apply the doctrine of comity, which, while not a constitutional obligation, is a "principle of mutual convenience whereby one state or jurisdiction will give effect to the laws and judicial decisions of another."

*Griffith*, 341 S.W.3d at 54. Under the doctrine of comity, a Texas court would usually stay its proceeding pending adjudication of the first filed suit pending in another state. *Id.*

■ However, it is well-settled that the mere pendency of a prior suit in one state cannot be pleaded in abatement or in bar to a subsequent suit in another state, even though both suits are between the same parties and involve the same subject matter. *Id.* The reason for this rule is that "every state is entirely sovereign and unrestricted in its powers, whether legislative, judicial, or executive"; therefore, each state "does not acknowledge the right of any other state to hinder its own sovereign acts or proceedings." *In re State Farm Mut. Auto. Ins. Co.*, 192 S.W.3d 897, 901 (Tex.App.-Tyler 2006, orig. proceeding). Thus, comity is not a matter of right. *Nowell v. Nowell*, 408 S.W.2d 550, 553 (Tex.Civ.App.-Dallas 1966, writ dism'd). Being voluntary and not obligatory, the application of comity vests in the sound discretion of the trial court. *Id.; Griffith*, 341 S.W.3d at 54.

■ To obtain a stay in the later action, it is necessary that the two suits involve the same subject matter, involve the same issues, and seek the same relief. *Nowell*, 408 S.W.2d at 553. "One test to determine whether causes of action are identical is to ascertain whether the parties could obtain all the relief in the prior suit that they would be entitled to in the subsequent action." *Id.; see also In re BP Oil Supply, Co.*, 317 S.W.3d 915, 919 (Tex.App.-Houston [14th Dist.] 2010, orig. proceeding). Additional factors include, but are not limited to (1) which action was filed first; (2) whether the parties are the same in both actions; and (3) the effect of a judgment in the later action on any order or judgment entered in the prior action.

*In re BP Oil Supply, Co.,* 317 S.W.3d at 919.

We agree with Jackson Walker that while the two lawsuits arise out of the underlying Ashton Grove litigation in Oklahoma and involve the same parties, the causes of action are different and seek different remedies. Appellants' original petition in Oklahoma alleges Jackson Walker "owed a duty to represent Plaintiffs with the standard of care, skill or diligence that would be exercised by a reasonably prudent attorney," and "[d]efendant breached its duty by failing to exercise the requisite degree of care, skill, or diligence of an ordinary prudent attorney." Appellants assert that as a result of the breach, they suffered damages in excess of $10,000.

While appellants mention the parties entered into a contract for legal services, their cause of action is for legal malpractice, not for breach of contract. *See Allbritton v. Gillespie, Rozen, Tanner & Watsky, P.C.,* 180 S.W.3d 889, 892 (Tex.App.-Dallas 2005, pet. denied) (stating elements of a legal malpractice claim are (1) the attorney owed a duty to plaintiff; (2) attorney breached the duty; (3) breach proximately caused injuries; and (4) damages occurred). Further, in their response to Jackson Walker's motion for summary judgment, appellants state "Defendants have also filed a Motion to Abate or Stay and Brief in Support Thereof on the basis that Defendants have previously filed suit against Plaintiff for *legal malpractice* . . . ." (Emphasis added.)

Jackson Walker's original petition, on the other hand, describes the dispute as one "to recover attorneys' fees and expenses incurred on behalf of Defendants. Defendants received the benefit of the legal services provided by Jackson Walker but have refused to pay for tashhose legal services." Its petition further alleges

causes of action for breach of contract, unjust enrichment, and attorneys' fees. Thus, the parties causes of action do not involve the same issues.

Further, the parties are entitled to different damages. For example, Jackson Walker's potential entitlement to recovery of its fees is based on Texas Civil Practice and Remedies Code section 38.001(8), which provides for recovery of attorneys' fees on a written contract claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (West 2008). Appellants, on the other hand, may not recover attorneys' fees as part of their damages for their legal malpractice suit. *See Stephens v. Gen. Motors Corp.,* 905 P.2d 797, 799 (Okla.1995) (noting legal malpractice is an action for tort); *RJB Gas Pipeline Co. v. Colo. Interstate Gas Co.,* 813 P.2d 1, 14 (Okla.Civ.App.1989) ("There is no statute for recovery of attorney fees in tort actions."). Thus, while the parties in the suits are identical, we conclude the causes of action and damages sought are not the same.

In reaching this conclusion, we reject appellants' argument that a notation in the docket sheet of the Oklahoma court, which states it is a breach of contract case, is evidence that the two causes of action are identical. In general, a docket entry forms no part of the record that may be considered. *Guyot v. Guyot,* 3 S.W.3d 243, 246 (Tex.App.-Fort Worth 1999, pet. dism'd); *Energo Int'l Corp. v. Modern Indus. Heating, Inc.,* 722 S.W.2d 149, 151 (Tex.App.-Dallas 1986, no writ). One reason for not considering docket entries on appeal is because they are inherently unreliable. *Guyot,* 3 S.W.3d at 246; *In re Bill Heard Chevrolet, Ltd.,* 209 S.W.3d 311, 315 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding) (noting due to its unreliability, a docket entry is generally considered insufficient to constitute a decree of the court). An exception to this rule is that

docket entries may be examined to correct clerical errors in judgments or orders to determine the meaning of words used in a judgment or order. *Energo,* 722 S.W.2d at 151 n. 2. However, this exception does not apply to these facts because appellants are not seeking to correct a clerical error in a judgment or order. Thus, the trial court did not abuse its discretion in denying appellants' motion to stay based on the doctrine of comity. Appellants' first issue is overruled.

### Motion For Summary Judgment Awarding Attorneys' Fees

In their second issue, appellants argue the trial court erred by granting Jackson Walker's motion for summary judgment because it provided no evidence the $433,561.29 in damages awarded based on their breach of contract claim were reasonable. Jackson Walker responds summary judgment was proper because the record is devoid of any evidence the fees were unreasonable, objected to pursuant to the engagement contract, or based on the contingent outcome in the case below. Further, Jackson Walker argues appellants did not object to the affidavit of its CFO establishing the amount of damages owed. According to Jackson Walker, the only evidence appellants submitted was the affidavit of William Dow Hamm, III, which was mostly struck by the trial court.[1] Therefore, according to Jackson Walker, it was entitled to summary judgment as a matter of law because appellants failed to raise a material fact issue regarding the fees owed under the fee agreement. For the following reasons, we disagree with Jackson Walker.

The standard of review for a traditional summary judgment motion is well-established. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Quintana v. CrossFit Dallas, L.L.C.,* 347 S.W.3d 445, 449 (Tex.App.-Dallas 2011, no pet.). We review a summary judgment de novo. *Quintana,* 347 S.W.3d at 449. In determining whether a disputed material fact issue exists precluding summary judgment, we take evidence favorable to the nonmovant as true. *Nixon,* 690 S.W.2d at 548–49. We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *Quintana,* 347 S.W.3d at 449.

■■■ Jackson Walker attached to its motion for summary judgment the affidavit of Rick Herlan, who is the Chief Financial Officer of Jackson Walker. He stated that as CFO, his responsibilities included supervision of billing and collection processes within the law firm. He asserted that "Through issuance of monthly invoices, a systematic record of the services rendered by Jackson Walker has been kept with dates of service, charges and credits together with a description of the items provided by Jackson Walker L.L.P. to Defendants." However, we note the invoices and records were not attached to his affidavit nor included anywhere else in the record. The only reference he made to a "contract" is in terms of noting that appellants owed $32,357.97 in pre-judgment interest. Otherwise, he stated that "the *account* described in Plaintiff's Origi-

---

[1]. The parties disagree as to whether the trial court's oral rulings on Jackson Walker's objections to the Hamm affidavit during the summary judgment hearing were sufficient to preserve the arguments for review because the record does not contain a written order on these rulings. Because these arguments are not determinative of this issue on appeal, we need not address it.

nal Petition and Plaintiff's Motion for Summary Judgment is just, true and correct, and all just and lawful payments, offsets, and credits have been allowed upon the aforementioned *account*." (Emphasis added.)

We first note Jackson Walker filed its original petition against appellants to recover attorneys' fees based on a breach of contract, not a suit on a sworn account. Had Jackson Walker pleaded its case as a sworn account, we agree that it would not be required to establish proof of reasonableness of the fees so long as the account "show[s] with reasonable certainty the name, date, and charge for each item, and provide[s] specifics or details as to how the figures were arrived at." *See Panditi v. Apostle*, 180 S.W.3d 924, 926 (Tex.App.-Dallas 2006, no pet.) (holding in attorney suit against former client on suit for sworn account, evidence consisting of the amount invoiced and not paid without a statement as to the reasonableness of that amount, is legally sufficient to support summary judgment in favor of attorney). However, such is not the case under these facts. Therefore, the law as it pertains to suits on sworn accounts does not apply.

We must review the summary judgment evidence in terms of a breach of contract case, as pleaded by Jackson Walker. Nothing within Herlan's affidavit links the damages alleged by Jackson Walker to a breach of the engagement contract. While Jackson Walker contends in a letter brief submitted post-argument that Herlan "testified regarding the balance of $433,561.29 due and payable by Appellants to Jackson Walker" and " 'pursuant to the terms of the contract' Appellants owed Jackson Walker an additional amount of interest" and such statements provide "the linkage between the damages and the engagement contract," we do not agree. The affidavit speaks in terms of an "account" and the references to the terms of the contract are merely for interest owed, not for any underlying breach or damages owed under the contract. Thus, Jackson Walker has provided no evidence of a breach of the underlying contract and therefore has not shown it is entitled to damages.

While Jackson Walker cites *McGuire, Craddock, Strother & Hale, P.C. v. Transcontinental Realty Investors, Inc.*, 251 S.W.3d 890, 898–99 (Tex.App.-Dallas 2008, pet. denied) for the proposition that once a party establishes the amount billed but not paid, this alone is sufficient to support a breach of contract finding, we do not find it persuasive. In that case, the law firm sued to recover unpaid fees from a client based on breach of contract and fraudulent inducement. *Id.* at 894. A jury found in favor of the law firm and awarded $298,630 in damages; however, the trial court granted a motion for JNOV and ordered both parties take nothing. *Id.* In a crosspoint on appeal, Transcontinental argued the evidence at trial was legally insufficient to support the breach of contract finding. *Id.* at 898. On appeal, this court held the following:

> The evidence at trial showed that the parties agreed that McGuire, Craddock would represent RT Realty in the DART litigation and that the parties would continue to submit invoices and make payments as they had been doing with respect to the Aetna matter. Basic Capital failed to pay the invoices for work performed from October 1999 through July 2000. The amount billed for but not paid was $298,630. This evidence alone is sufficient to support the breach of contract finding.

*Id.* at 898–99. We find that case distinguishable because it is based on evidence presented at trial while here, Jackson Walker tried to prove a breach of contract through an insufficient affidavit. Signifi-

cantly, this court determined the evidence was sufficient under a legal sufficiency standard of review, which is vastly different than the "matter of law" standard for a traditional motion for summary judgment. Thus, despite its arguments to the contrary, we conclude Jackson Walker has not provided the appropriate linkage between the breach of contract and damages.

However, we are mindful that appellants failed to raise this issue in their response to Jackson Walker's motion for summary judgment; instead, appellants complain about the reasonableness of Jackson Walker's fees. Therefore, we are left with the unique situation of deciding whether a party must prove its attorneys' fees are reasonable under the *Andersen* factors when there has been no showing of a breach of an underlying contract resulting in liability. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (quoting Tex.R. Prof'l Conduct 1.04(b)).

Jackson Walker argues no Texas case has applied the *Andersen* factors to an hourly fee contract when a law firm is suing its non-paying client. However, as noted, we are not dealing with the typical situation in which attorneys have proven a breach of contract and are therefore entitled to a recovery of the negotiated contract fee. For this reason, *In re Polybutylene Plumbing Litigation*, 23 S.W.3d 428 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd) cited by Jackson Walker, is inapplicable. In that case, a law firm entered into thousands of individual contingent fee contracts with plaintiffs for representation in polybutylene pipe litigation. *Id.* at 433. After the litigation settled, the attorneys sought to collect their forty percent in fees based on the contracts. *Id.* at 434. The trial judge sua sponte set hearings on the reasonableness of the attorneys' fees and as a result of the hearings, the trial judge reduced the fees owed by $55.7 million. *Id.* at 435. The issue on appeal was whether "in light of the absence of a class action, a trial judge can properly modify otherwise perfectly legal fee contracts because the judge concludes it is not 'fair' for the attorneys to receive the percentage of each recovery that was agreed upon in advance with each client." *Id.* at 436.

On appeal, the court concluded the trial court did not have power, inherent or otherwise, to void or rewrite a fully-performed attorneys' fee contract in the absence of pleading and proof of barratry, fraud, breach of fiduciary duty, incapacity, illegality, class action, or the applicability of the common fund doctrine. *Id.* at 439. While it did state, "if an attorney fee contract was valid when made, and it was made by and between mentally competent persons, it is to be enforced without court review of the reasonableness of attorney's fees so fixed," we do not find this statement to support Jackson Walker's position. *Id.* at 436. First, the contracts in *Polybutylene* were contingent fee contracts, in which the trial court sua sponte determined the reasonableness. *Id.* But most importantly, unlike the facts here, there was no claim by anyone that the individual attorney fee agreements, viewed separately, "were improper, illegal, fraudulent, excessive, or out-of-the-ordinary." *Id.* Rather, the complaint was that in light of the number of plaintiffs involved in the settlement, the firm was simply getting too much money in the aggregate. *Id.* Thus, the issue before the Houston appellate court was not whether a party must establish the reasonableness of fees under the *Andersen* factors when the parties have entered into a valid hourly fee contract, but rather whether a trial court could sua sponte review the reasonableness of attorneys' fees when no one had challenged the reasonableness of the fees. Accordingly, while *Polybutylene* appears to contain lan-

guage supporting Jackson Walker's position, a closer reading of the statement within the overall context of the case does not support its argument.

■ Given the unique facts of this situation, we conclude the *Andersen* factors apply in determining the reasonableness of attorneys' fees. While we acknowledge the *Andersen* court did not discuss factors to be considered in awarding attorneys' fees based on an hourly contract, but instead ruled according to contingency fee contracts, we nevertheless conclude the factors should apply to these facts. Because no underlying liability has been established through breach of contract or otherwise, it only seems prudent that we employ some gate-keeping function to ensure attorneys' fees are reasonable under Texas Rule of Professional Conduct 1.04. *See, e.g.,* TEX.R. PROF'L CONDUCT 1.04(b) cmt. 4 (noting the determination of a proper fee requires consideration of the interests of both client and lawyer).

Factors to consider include (1) the time and labor required and difficulty of the issues involved; (2) the likelihood that acceptance of the employment will preclude other employment by the lawyer; (3) the fees customarily charged in the locality for similar legal services; (4) the amount involved and results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent on the result obtained. *Arthur Andersen & Co.*, 945 S.W.2d at 818. Thus, we must determine if Jackson Walker provided evidence in support of these factors to justify its award of attorneys' fees.

As previously noted, Jackson Walker attached to its motion for summary judgment the affidavit of its CFO, Rick Herlan.

While he stated his responsibilities include supervision of the billing and collection processes within the firm, he did not testify to any of the *Andersen* factors such as fees customarily charged for similar circumstances, the nature and length of time of the professional relationship with the client, or the experience or reputation of the lawyers involved. Therefore, he made no attempt to prove up the fees but rather testified only to the authenticity of the financial records. Further, the affidavit does not reflect whether Herlan is an attorney and even qualified to testify as to the reasonableness of fees. Thus, Herlan's affidavit does not provide competent summary judgment evidence supporting the trial court's award of attorneys' fees.

Also attached to its motion for summary judgment was the affidavit of W. Ross Forbes, Jr., a Jackson Walker attorney who worked on the breach of contract suit from the original filing through the motion for summary judgment. While he testified that he received and reviewed file materials dealing with the underlying Oklahoma lawsuit, his affidavit focuses on the work provided by Jackson Walker attorneys in the "prosecution of this lawsuit," meaning its breach of contract suit. Nothing within his affidavit discusses the reasonableness of Jackson Walker's fees in the amount of $433, 561.29. Jackson Walker attached no other evidence to its motion for summary judgment supporting its fees. Thus, because Jackson Walker failed to establish its entitlement to attorneys' fees as a matter of law, we conclude the trial court erred in granting its motion for summary judgment. We reverse and remand for further proceedings on this issue. In reaching this conclusion, we likewise reverse and remand the award of $8,000 in fees awarded to Jackson Walker for prosecution of this lawsuit.

## Motion for Continuance

In their final point, appellants argue the trial court abused its discretion by providing them insufficient time to hire new attorneys after the Oklahoma firm withdrew and by denying a motion for continuance. Jackson Walker responds the trial court did not abuse its discretion because sixteen days was adequate time to hire new counsel, and it was appellants' own decision to proceed without counsel.

Appellants filed a motion for continuance on August 10, 2009. The trial court granted the motion on August 12, 2009 and continued the motion for summary judgment hearing until September 4, 2009. The same day, the trial court signed an order granting Oklahoma counsel's motion to withdraw and stated "counsel by August 28, 2009."

Appellant William Dow Hamm, III wrote a letter to the trial court on August 28, 2009 informing the court, "I am earnestly seeking new counsel, and have met or talked with several attorneys, but have not yet reached an agreement to retain new counsel in the short time that has passed since August 12." He then requested the court to "postpone its September 4 hearing for a reasonable period of time." Jackson Walker filed a response letter explaining why appellants should not be allowed more time to hire new counsel.

The trial court proceeded with the summary judgment hearing on September 4, 2009. Appellant William Dow Hamm, III appeared pro se.

While not argued by Jackson Walker, we conclude appellants have waived their argument regarding the trial court's failure to grant a continuance. Texas Rule of Civil Procedure 251 states, "No application for a continuance shall be heard before the defendant files his defense, nor shall any continuance be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX.R. CIV. P. 251. Appellant's letter, which we construe as seeking a motion for continuance, does not include any supporting affidavit. Further, nothing in the record shows the parties consented to a continuance or that they are entitled to a continuance by operation of law. Accordingly, appellants have failed to preserve their issue for review. *See, e.g., Taherzadeh v. Ghaleh–Assadi*, 108 S.W.3d 927, 928 (Tex.App.-Dallas 2003, pet. denied) (holding party failed to preserve error when he presented his oral motion for continuance without a supporting affidavit). Appellants' third issue is overruled.

## Conclusion

The trial court did not err in failing to grant appellants' motion to stay or abate the case pending outcome of the Oklahoma proceedings or in failing to grant appellants' motion for continuance. However, the trial court did err in granting Jackson Walker's motion for summary judgment and awarding $433,561.29 in attorneys' fees. Thus, we reverse as to the summary judgment and remand for further proceedings. We affirm the trial court's judgment in all other respects.