

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00763-CV

**COASTAL RESOURCES, LTD.**,
Appellant

v.

**LOS LAZOS CONSTRUCTION AND LEASE SERVICE, LLC**
and Coyote Paving & Construction, Inc.,
Appellees

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 6,864
Honorable Jose A. Lopez, Judge Presiding

Opinion by: Luz Elena D. Chapa, Justice

Sitting: Karen Angelini, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: April 24, 2013

AFFIRMED IN PART ON CONDITION OF REMITTITUR;
REVERSED AND REMANDED IN PART

Coastal Resources, Ltd. appeals the trial court's judgment awarding damages and attorney's fees to Los Lazos Construction and Lease Service, LLC and Coyote Paving & Construction, Inc. Coastal contends: (1) the trial court erred in allowing Coyote to file an amended pleading on the day of trial asserting a cross-claim against Coastal; (2) Los Lazos's claim was barred by the statute of frauds; and (3) the evidence is legally and factually insufficient to support the jury's award of damages and attorney's fees. We affirm the judgment

in favor of Los Lazos on condition of remittitur; however, we reverse the judgment in favor of Coyote and remand Coyote's claim against Coastal for a new trial.

## BACKGROUND

Zapata County awarded two road construction contracts to Coastal. One contract involved construction on roads in an area identified as Precinct 3, and the other contract involved construction on roads in an area identified as Precinct 4. Coastal subcontracted with Coyote for work on each of the contracts. After construction on both contracts had commenced, representatives of Coastal and Coyote met with a representative of Los Lazos. Los Lazos had not been involved in the construction under either contract until this meeting. After the meeting, Los Lazos began supplying caliche and providing labor for certain streets included within the construction project. After the project was complete, Los Lazos sued Coastal and Coyote for payment, and Coyote asserted a cross-claim against Coastal for payment for its work. Based on a jury verdict, the trial court entered a judgment in favor of both Los Lazos and Coyote. Coastal appeals.

## REINSTATEMENT OF COUNTER-CLAIM

In its first issue, Coastal asserts the trial court erred in granting Coyote leave to file an original cross-claim against Coastal on the day of trial. Coastal's issue, however, misstates the substance of the trial court's ruling.

Los Lazos originally filed its lawsuit against Coyote and Coastal in August of 2008. The first pre-trial guideline order set the cause for trial in August of 2009. In May of 2010, Los Lazos filed a request for a docket control conference because the case was not set for trial at that time. On June 1, 2010, the trial court signed a second pre-trial guideline order, setting the trial for August 16, 2010, with a final pre-trial hearing scheduled for August 3, 2010. The order also required the defendants to file their amended pleadings by July 3, 2010.

On July 8, 2010,[1] Coyote filed a third amended original answer and cross-claim, asserting various claims against Coastal, including breach of contract for its failure to pay Coyote for all of the service and work Coyote performed on the construction project. On August 3, 2010, the attorneys for Los Lazos and Coastal appeared before a visiting judge for the final pre-trial hearing. Los Lazos's attorney announced ready and noted that the case had been pending for two years. After Coastal's attorney announced not ready, Los Lazos's attorney explained that the not-ready announcement was based on Coyote's filing of its third amended original answer and cross-claim. Los Lazos's attorney argued the amended pleading should be stricken because it was filed three days late based on the deadlines contained in the pre-trial guideline order. Coastal's attorney then stated:

> MR. RAMOS: Assuming the court would allow the pleadings to stand, I have statutory defenses, you might have a statute of limitations defense. We've done all the depositions when they came in, so I needed time to prepare for all that, that's why I'm announcing not ready.
> Additionally, when we began the depositions, the deposition of Mr. Ramiro Saldivar the head plaintiff here, when it was my turn to cross-examine, there were some documents that were not available and they were supposed to have been provided for me so that I could then finish my cross-examination. We haven't done that.
> Counsel tells me that in fact the documents may have been filed in one of the other depositions, but if [sic] they weren't identified as such, and, therefore, I was unable to finish cross-examining for taking my deposition of the main plaintiff, and, therefore, that's why we're announcing not ready. I would ask for an extension of about 90 days. That's all I need.

Based on the amended pleading being filed after the pre-trial guideline order deadline, the trial court verbally struck the pleading. Coastal's attorney then asked whether the case remained set for August 16, 2010, and the trial court responded that it was. However, Los Lazos's attorney then stated that he had a federal court setting in a criminal case on that date which he believed would take precedence over the trial setting of the underlying case. Los Lazos's attorney further

---

[1] The document was mailed on July 6, 2010; therefore, references are made in the record to it having been filed on the date it was mailed.

stated, "I guess I can file a motion to continue." The visiting judge stated, "You probably need to file it with Judge Lopez [the presiding judge] and see what he says." A docket sheet entry was made regarding the striking of Coyote's third amended answer and cross-claim, but no written order was signed to document the ruling.

On August 13, 2010, Coyote filed a motion for continuance of the trial setting. The motion stated that the father of Coyote's attorney had been rushed to the emergency room earlier that week and remained hospitalized with a cardiac condition. The record does not reflect the basis for which the trial date was reset; however, the case did not proceed to trial on August 16, 2010.

On August 23, 2010, Los Lazos filed its fourth amended petition adding claims against Ernestina Flores and Joel Gutierrez, who were on Coyote's board of directors. These claims were based on the allegation that Coyote had forfeited its corporate existence, making its directors jointly and severally liable.

On August 31, 2010, the trial court signed a third pre-trial guideline order. This order set the case for trial on November 8, 2010, with a final pre-trial hearing scheduled for November 2, 2010.

On October 14, 2010, Flores and Gutierrez filed their answers and also filed cross-claims against Coastal, asserting the same claims Coyote asserted in its third amended answer and cross-claim. These claims included a breach of contract claim for Coastal's failure to pay Coyote for all of the service and work Coyote performed on the construction project.

On January 3, 2011, Los Lazos filed a request for a jury trial setting. The request noted the November 8, 2010 jury trial setting was removed from the trial calendar based on various other case settings. The trial court then signed an order setting the case for trial on March 28,

2011, with a final pre-trial hearing scheduled for March 3, 2011. At the March 3, 2011 hearing, the trial was again reset to July 18, 2011.

On July 18, 2011, the first day of trial, a Rule 11 agreement, dated July 15, 2011, was filed. The Rule 11 agreement settled the cross-claims Gutierrez and Flores asserted against Coastal. The Rule 11 agreement expressly stated, however, "As discussed, this does not affect the cross-claim filed by Coyote against Coastal or Coastal's filed defenses." In addition to the settlement between Coastal and these individual defendants, Los Lazos also non-suited the individual defendants that it had sued who were Coyote's directors or owners.

Coyote also filed a motion for reconsideration of the visiting judge's verbal order striking its third amended answer and cross-claim. The motion stated Coyote's attorney only discovered the verbal order when he was reviewing the hand-written docket sheet in preparation for trial. The motion asserted that the basis for the verbal order was a deadline in a pre-trial guideline order that was nullified by a resetting of the trial date. Finally, the motion noted that Coyote's cross-claim was the same claim that Gutierrez and Flores also asserted against Coastal.

After the case was called for trial and the judge made his initial remarks to the venire panel, the following exchange occurred:

> THE COURT: But I'd like to know what the posture of the defendants are in terms of with each other. Is there anything with each other or is there against each other?
> MR. D. RAMOS [Los Lazos's counsel]: One thing we learned this morning is apparently they have settled with —
> MR. NOTZON [Coyote's counsel who also represented Gutierrez and Flores]: Partially.
> MR. D. RAMOS: — partially with one of the defendants.
> MR. NOTZON: The individual defendants.
> MR. PEREZ [Coastal's lead counsel]: There was a cross-action filed against [sic] Joel —
> MR. NOTZON: Gutierrez.
> MR. PEREZ: — Gutierrez and Ernestine Flores against Coastal in their individual capacity. Our defense, although we never dealt with them individually, was always as—

> MR. NOTZON: Coyote.
> MR. PEREZ: — Coyote. And after discussing that with Mr. Notzon and he discussed it with his client, we settled that. Individual, but the Coyote claim is still pending.
> THE COURT: There's still a Coyote claim, a cross-claim between Coyote and whom?
> MR. J.L. RAMOS [Coastal's co-counsel]: There's no —
> MR. NOTZON: And Coastal.
> MR. J.L. RAMOS: We've got a claim, only individual claims. You don't have a Coyote claim.
> MR. NOTZON: Yes.
> THE COURT: What is it?
> MR. NOTZON: We have a Coyote claim.
> MR. PEREZ: He has a Coyote claim.
> MR. J.L. RAMOS: Okay.
> MR. NOTZON: The Coyote claim — we settled that for $5,000 and they were going to pay that today.
> THE COURT: But it's settled?
> MR. NOTZON: Yes.
> MR. PEREZ: The individual claims.
> MR. NOTZON: The individual.
> THE COURT: But not the Coyote claims.
> MR. PEREZ: Not Coyote.
> MR. NOTZON: Correct.
> THE COURT: It remains.
> MR. NOTZON: Yes, sir.
> THE COURT: So Coastal continues with the Coyote claim.
> MR. NOTZON: So basically plaintiff is suing us, plaintiff is suing them and we're suing them.

After various other matters were handled and voir dire had commenced, an additional exchange occurred in which Coastal's attorney urged Coyote's attorney to request a ruling on his motion to reinstate the cross-claim. A lengthy discussion then ensued about the verbal order striking the pleading pursuant to a superseded pretrial guideline order, the absence of a written order, the Rule 11 agreement in which Coastal acknowledged Coyote's cross-claim, and whether Coastal relied on the verbal order striking the pleading given the subsequent resets and the

settlement negotiations regarding the individual defendants' identical cross-claim.[2]   At the

conclusion of the discussion, the trial judge stated he wanted to see the attorneys in chambers

---

[2] The following details part of this discussion:

> MR. PEREZ:  Bring up your motion right now.
> MR. NOTZON:  Okay.
> MR. PEREZ:  Mr. Notzon has a motion pending before the Court, a motion for leave.
> MR. NOTZON:  Judge, I had filed a motion just in case, but based on the stipulation they made on the record, that disposes of it.
> [Discussion regarding motions in limine]
> MR. PEREZ:  And on your Motion for Leave, what did he say about that?
> MR. NOTZON:  There's no Motion for Leave.  There was — basically, in preparing, we saw a docket sheet that there was a Motion to Strike our pleadings when my father was in the hospital and I couldn't be here at the final pretrial.
> But no motion was filed, and no order was signed — nothing was signed.  There was a new pretrial guideline order entered into.
> MR. D. RAMOS, JR.:  We don't oppose it.
> MR. NOTZON:  So basically we announced on the record the settlement and that our claims were still —
> THE COURT:  Valid?
> MR. NOTZON:  — pending against Coastal.
> MR. PEREZ:  But no, we don't agree with that, Your Honor, I wasn't here at that time.
> MR. J.L. RAMOS:  I was.
> MR. PEREZ:  But Mr. Ramos was present when that motion [sic] was stricken.  We never responded — we never responded to that — that cross-action because it was stricken by the Judge that was here for you.
>
> ***
>
> MR. NOTZON:  There's a new guideline order entered, Judge that moots everything.
> MR. PEREZ:  It wasn't refiled, Your Honor.  They were seeking to refile it.  We were served with a copy — a Motion for Leave for a refile.
> THE COURT:  When was this?
> MR. PEREZ:  August the 10th of 2010.
> THE COURT:  It was in 2010?
> MR. PEREZ:  Yes.
>
> ***
>
> THE COURT:  Didn't you enter into an agreement with regard to the individual defendants in this case?
> MR. J.L. RAMOS:  That's settled.
>
> ***
>
> THE COURT:  Why didn't you all tell them on July 15 that, I don't know what claim you're talking about, it doesn't exist?
> MR. NOTZON:  Correct, Judge.
> MR. PEREZ:  Because we were trying to get rid of the case just for nuisance value, Your Honor, with them.
> THE COURT:  All right.  I understand your point.
> MR. PEREZ:  My position is that, if — if the Court wants to allow them to file the pleadings, just give us a continuance so that we can depose them and file an answer.
> MR. NOTZON:  Judge, they've already deposed my client.
> THE COURT:  Okay.  I'm going to — I don't know what you all did or what you didn't do, but the bottom line is that if — you know what, I'll be right back.  I want to see all of you all in chambers.

where he apparently granted the motion to reinstate given that Coyote was permitted to pursue the cross-claim at trial.

We initially note that docket sheet entries are generally not considered court orders. *See, e.g.*, *Smith v. McCorkle*, 895 S.W.2d 692, 692 (Tex. 1995) ("docket entry does not constitute written order"); *Ashton Grove L.C. v. Jackson Walker L.L.P.*, 366 S.W.3d 790, 795 (Tex. App.—Dallas 2012, no pet.) ("docket entry forms no part of the record that may be considered"); *Salais v. Tex. Dept. of Aging & Disability Servs.*, 323 S.W.3d 527, 537 (Tex. App.—Waco 2010, pet. denied) (noting orders must be entered of record and docket-sheet entries are not "of-record" ruling). This case provides a good reason for this rule. Absent a written order entered of record, attorneys do not receive notice of a ruling when not present at a hearing at the time the ruling is verbally pronounced and solely noted on a docket sheet.

For purposes of this opinion, however, we will assume the visiting judge's verbal ruling was sufficient to strike Coyote's cross-claim, and Rule 63 of the Texas Rules of Civil Procedure applies to the trial court's ruling on Coyote's motion to reinstate. Although a party is not permitted to file an amended pleading within seven days of trial without obtaining leave of court, the court is required to grant leave absent a showing that the amendment will operate as a surprise to the opposing party. TEX. R. CIV. P. 63. A trial court may also refuse to grant leave to amend a pleading during that timeframe if the amended pleading asserts a new cause of action, making it prejudicial on its face. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994). We review a trial court's ruling on a request for leave under an abuse of discretion standard. *Id.*; *Nairn v. Killeen Ind. Sch. Dist.*, 366 S.W.3d 229, 249 (Tex. App.—El Paso 2012, no pet.).

In this case, Coyote's cross-claim was not a new cause of action because it was identical to Gutierrez's and Flores's cross-claim. Moreover, the record contains no evidence of surprise to

Coastal given that Coastal acknowledged the existence of Coyote's cross-claim in the Rule 11 agreement it signed three days before trial commenced. Finally, the absence of surprise is evident because Coastal's attorney acknowledged Coyote's cross-claim prior to voir dire when the trial court requested a description of the parties' posture. Therefore, even assuming the visiting judge's verbal order and docket sheet entry effectively struck Coyote's cross-claim when it was initially filed over one year before trial, we hold the trial court did not abuse its discretion in granting Coyote's motion to reinstate its cross-claim. Coastal's first issue is overruled.

### STATUTE OF FRAUDS

In its second issue, Coastal contends the trial court erred in entering a judgment awarding damages to Los Lazos based on the breach of an oral contract in the absence of a finding excepting the oral contract from the statute of frauds. As Los Lazos notes in its brief, however, Coastal never pled the statute of frauds as an affirmative defense to Los Lazos's breach of contract claim. The statute of frauds is an affirmative defense which is waived if not pled. *See* TEX. R. CIV. P. 94; *Phillips v. Phillips*, 820 S.W.2d 785, 791 (Tex. 1991); *Nicol v. Gonzales*, 127 S.W.3d 390, 393 (Tex. App.—Dallas 2004, no pet.). Because Coastal failed to plead the statute of frauds and the record does not show the affirmative defense of statute of frauds was tried by consent, Coastal's second issue is overruled.

### DAMAGES

In its third, fourth, and fifth issues, Coastal attacks the sufficiency of the evidence to support the damages awarded to Los Lazos and Coyote, and it contends the award of damages is excessive and constitutes a double recovery.

A.      Standard of Review

We review a legal sufficiency or "no evidence" challenge under the well-established principles set forth in *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Reviewing the

evidence in the light most favorable to the finding and indulging every inference that would support it, we sustain a no-evidence challenge only if: (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id*. at 810, 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id*. at 819.

When reviewing a jury verdict to determine the factual sufficiency of the evidence, we consider and weigh all the evidence, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We also review an excessive damages claim using a factual sufficiency analysis. *See Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986). As an intermediate court, we must "examine all the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust." *Id*.; *see also Bernstein v. Thomas*, 298 S.W.3d 817, 825 (Tex. App.—Dallas 2009, no pet.).

B.    Los Lazos

With regard to the damages awarded to Los Lazos, Coastal contends Los Lazos based its damages model on the total amount of caliche required by the construction project's specifications and "assumed all caliche used on the job was taken from its caliche pit." Coastal asserts "[u]ncontroverted evidence showed caliche from other pits was used on the job," and "Los Lazos' caliche was used by Coyote on other jobs besides Coastal's job with the County."

In order to place Coastal's complaints in context, we must review the testimony of Los Lazos's representative, Ramiro Saldivar. Saldivar testified that when he met with Coyote's and

Coastal's representatives, Joseph Mendez, Coastal's representative, requested that Los Lazos provide both caliche and labor to help Coastal finish the construction project. Prior to that meeting, Coastal was obtaining its caliche for the project from another source; however, that caliche pit was located farther from the construction project than was Los Lazos's. Los Lazos agreed to provide Coastal with the caliche for $4.25 per cubic yard. Saldivar identified the streets for which Los Lazos provided only caliche and the streets for which Los Lazos also provided labor, and an exhibit listing those streets was introduced into evidence. Saldivar acknowledged the project included streets for which Los Lazos did not provide caliche and excluded those streets from its exhibit. Saldivar testified he used the plans and specifications that set forth the required amounts of material to calculate the amount of the caliche he provided for those streets. A few pages from the plans and specifications were separately introduced into evidence to support Saldivar's testimony. Saldivar further testified that he was informed on one occasion that Coastal was taking caliche from Los Lazos's pit without having obtained prior permission. Saldivar reported this incident to the police, and a police report was made. Based on his physical measurements of the caliche pit and calculations based on those measurements, Saldivar testified that Coastal had taken approximately 4,000 cubic yards of caliche.

Exhibits were introduced showing Saldivar's damage calculations based on the foregoing testimony. For the Precinct 3 portion of the project, the exhibits showed Los Lazos was owed: (1) $78,812.39 for labor and material for the street identified as Eagle/FAL; (2) $51,266.60 for material provided for additional streets; and (3) $12,750 for the caliche Saldivar testified that Coastal had taken without authorization. Saldivar testified that Los Lazos had been paid $62,678.30 of the amount it was owed. Finally, Saldivar testified that $5,000 should be deducted from the amount due for Precinct 3 because he did not complete a portion of the work on one street based on his concerns about not being paid by Coastal. Accordingly, this evidence showed

that Los Lazos was still owed $75,150.69 for the material and labor provided for streets in Precinct 3.

In addition, for the Precinct 4 portion of the project, the testimony and exhibits established that Los Lazos was owed: (1) $37,262.50 for labor and material for Falcon Ave.; (2) $33,951.80 for caliche for three additional streets; (3) $8,000 for additional caliche for the Coyote yard; and (4) $10,200 for additional equipment and labor for the Precinct 4 roads. Thus, the total owed to Los Lazos for material, labor, and equipment for the Precinct 4 portion of the project was $89,414.30.

Coastal's representative, Joseph Mendez, testified that the plans and specifications are commonly used to estimate the amount of caliche used for this type of project. Mendez agreed that Zapata County paid Coastal for the caliche based on the amounts set forth in the plans and specifications. Mendez also agreed that the supplier of the caliche should be paid because Coastal was paid. Mendez further agreed that the engineer certified the work was completed in accordance with the plans and specifications. Coastal's primary complaint was that Coyote should pay Los Lazos, not Coastal; however, this complaint does not affect the total amount that Los Lazos should be paid for the work it performed and the material it provided.

Although Saldivar's testimony and the exhibits introduced into evidence support most of the damages awarded to Los Lazos, the testimony regarding the $8,000 in damages that Los Lazos claimed based on its delivery of 2,000 cubic yards of caliche to Coyote's yard requires further consideration. Saldivar testified that the caliche was dumped at Coyote's yard for use by Coyote. Although Saldivar also testified that the caliche was used for the county, he admitted Coyote had projects on-going with the county other than the project for which Los Lazos was suing Coastal. Saldivar further admitted that the caliche from Coyote's yard could have been used on other projects. Aleida Gutierrez, who was Coyote's representative, also testified Coyote

had a contract with the county to provide materials for another project, and the caliche for that project also was stockpiled at Coyote's yard.

Based on the foregoing testimony, we conclude the evidence is factually insufficient to support the jury's award of damages for the 2,000 cubic yards of caliche stockpiled in Coyote's yard because Los Lazos failed to meet its burden to prove that the caliche that was delivered to Coyote's yard was used on Coastal's project.[3] Accordingly, the damage award in favor of Los Lazos is excessive in the amount of $8,000, and we suggest a remittitur of that amount. *See* TEX. R. APP. P. 46.3.

### C. Coyote/Double Recovery

With regard to the damages awarded to Coyote, Coastal argues that Coyote's "retainage model" failed to take into account its contractual obligation to pay Los Lazos for damages it claimed under its "specifications model." Saldivar testified that Los Lazos provided Coyote with caliche it used in performing its work on the construction project, and Gutierrez also admitted that Los Lazos was one of the entities that supplied Coyote with caliche. The exhibits attached to Coyote's demand letter, which was introduced into evidence, establish that Coyote was asserting damages for the provision of flexible base, or caliche, on at least three of the streets for which Los Lazos also was seeking damages, specifically the Monterrey, Guadalupe, and Buena Vista streets. Gutierrez also testified that Coyote's work included Diaz street for which Los Lazos also sought damages for the caliche it provided. To the extent Los Lazos supplied the caliche, this would also affect the amount of the retainage which Coyote may be entitled to recover if the value of the caliche was included in the invoiced amount upon which the retainage

---

[3] We note that to the extent the caliche from Coyote's yard was used on the Coastal project, Los Lazos recovered damages for that caliche because Los Lazos's damages model included damages for the caliche used on all of the streets in the Coastal project for which Los Lazos provided caliche, with the amount calculated from the plans and specifications.

amount was based. We note the draw request relating to the work on Diaz street included a retainage amount.

Although Gutierrez's testimony is legally sufficient to support the damages the jury awarded, we agree with Coastal that based on the exhibits introduced and Gutierrez's testimony, a portion of the damages awarded to Coyote included damages for the caliche provided by Los Lazos for which Los Lazos recovered damages. Accordingly, we hold the evidence is factually insufficient to support the damages awarded to Coyote. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) (noting "[t]here can be but one recovery for one injury"). Because this court may not order a new trial "solely on unliquidated damages if liability is contested," TEX. R. APP. P. 44.1(b), we reverse the trial court's judgment with regard to Coyote's claim against Coastal, and we remand that claim to the trial court for a new trial.

### ATTORNEY'S FEES

Although Coastal asserts a legal and factual sufficiency challenge to the attorneys' fee award in its sixth issue, the only argument made in its brief is that Los Lazos's attorney did not "testify about the elements of TEX. DISCIPLINARY R. PROF. CONDUCT 1.04."[4] However, a court "is not required to receive evidence of each of these [elements] before awarding attorney's fees." *McCalla v. Ski River Dev., Inc.*, 239 S.W.3d 374, 381 (Tex. App.—Waco 2007, no pet.); *see also State & County Mut. Fire Ins. Co. ex rel. Southern United Gen. Agency of Tex. v. Walker*, 228 S.W.3d 404, 408 (Tex. App.—Fort Worth 2007, no pet.).

In the instant case, detailed time records were introduced to support the hours of work performed by Los Lazos's attorneys in the underlying case from August of 2008, when their work commenced, to July 14, 2011, before trial commenced on July 18, 2011. The records also

---

[4] Our reversal of the judgment as to Coyote's claim necessarily also reverses the award of attorney's fees in favor of Coyote; therefore, we do not separately address this issue. TEX. R. APP. P. 47.1.

documented the expenses that were incurred in connection with the case. Los Lazos's lead attorney testified about his experience and the hourly rates charged by the attorneys and paralegals involved in the case. This evidence established Los Lazos had incurred $28,672.50 in attorney's fees prior to the commencement of trial. Los Lazos's lead attorney also testified regarding the number of hours of work performed by himself and the other trial attorney during trial and the hourly rates for those hours, which totaled $24,000. Finally, Los Lazos's attorney testified his firm incurred expenses prior to trial in the amount of $8,389.27, and additional expenses of $500 during trial. Based on his forty years of experience as a litigator, Los Lazos's attorney testified that the attorney's fees were reasonable, necessary, equitable, and just. Neither Coyote's attorney nor Coastal's attorney cross-examined Los Lazos's attorney regarding his testimony. Based on the foregoing, we hold the evidence is legally and factually sufficient to support the jury's award of $50,000 in attorney's fees to Los Lazos for preparation and trial.

## CONCLUSION

Because the damage award to Los Lazos is excessive in the amount of $8,000, we suggest a remittitur of that amount. We affirm the portion of the judgment in favor of Los Lazos conditioned on this remittitur. Because liability is contested, if this remittitur is not filed within twenty days from the date of this opinion, the trial court's judgment in favor of Los Lazos will be reversed, and Los Lazos's claim against Coastal will be remanded to the trial court for a new trial on all issues. *See* TEX. R. APP. P. 46.3; 44.1(b); *see Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 769 (Tex. App.—Dallas 2008, no pet.). The portion of the trial court's judgment awarding Coyote damages and attorney's fees is reversed, and Coyote's claim against Coastal is remanded to the trial court for a new trial.

Luz Elena D. Chapa, Justice