# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00485-CV

---

**Appellant, Robert Goepp // Cross-Appellant, Heidi M. Goepp-Schurman**

**v.**

**Appellees, Comerica Bank & Trust, N.A.; Heidi M. Goepp-Schurman; and Myra J. Goepp // Cross-Appellees, Comerica Bank & Trust, N.A.; Robert Goepp; and Myra J. Goepp**

---

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-18-001903, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING

---

## MEMORANDUM OPINION

Robert C. Goepp (Bob) and Heidi Goepp-Schurman each appeal from the probate court's order denying Heidi's plea to the jurisdiction and motion to abate or dismiss the case; overruling Bob's reimbursement request; and granting Comerica's petition for settlement of trustee's final account and for an order of no liability. For the following reasons, we affirm.

## BACKGROUND

Bob, Heidi, and Myra Goepp are the children of Robert A. and Iraida P. Goepp.[1] During their lifetimes, Robert and Iraida established the Robert A. Goepp Marital Trust and the Iraida P. Goepp Living Trust with their children as the ultimate beneficiaries. After Robert

---

[1] Because the parties share similar last names, we will refer to them by their first names and, consistent with the parties' appellation, refer to the father Robert A. Goepp as "Robert" and the son Robert C. Goepp as "Bob."

passed away, a Travis County guardianship proceeding for Iraida was initiated in 2011, and a guardian was appointed. The children also began serving as co-trustees of the Goepp Trusts. After conflicts arose, however, the children entered into a family settlement agreement (the FSA) in 2014 that provided for a corporate successor trustee, and Comerica filled that role. The FSA also provided that Bob would receive a parcel of real property (the Kilbourn Property); that Heidi and Myra would receive preferential cash distributions based on a Kilbourn Property appraisal; and that Myra or Bob "may pay incidental expenses relating to Iraida Goepp's care" and "submit those payments for reimbursements" to the "the Successor Trustee." Iraida passed away in 2015, and the next year the probate court signed an order admitting a copy of Iraida's will and appointing Comerica as dependent administrator. In April 2018, Comerica filed its final account and application to close Iraida's estate and to discharge the administrator.

In October 2018, Comerica, as trustee of the Goepp Trusts, filed a First Amended Petition for Settlement of Trustee's Final Account and Order of No Liability (the Trustee's Petition). Bob "object[ed]" to the Trustee's Petition, complaining about the timing of certain preferential distribution payments, about the calculations of interest on the distributions, and that he "has yet to be reimbursed the monies owed to him for out of pocket expenses of durable medical equipment purchased on behalf of Iraida." Heidi, initially acting pro se, filed an answer in December raising various complaints. Later that month, Heidi's lawyer filed an amended answer entering a general denial. In January 2019, Myra filed a general denial.

The probate court conducted a bench trial on the Trustee's Petition in June 2019. In its opening remarks, the probate court stated "that there is a plea to the jurisdiction and some other pleading" that "is being filed as we speak over with the clerk" and that "we're not going to proceed until the filer of that document, which I understand is maybe Heidi Goepp, is back with

2

her pleading and then we can get our announcements." At that time, Heidi, acting pro se at the trial, was filing a "Plea to the Jurisdiction, Motion to Vacate All Orders and Abate or Dismiss Case" (the Plea). When Heidi returned, the probate court stated, "You should have filed that with the clerk before today," and, "We'll take another recess." After the recess, Heidi testified as to the Plea on voir dire. Following Heidi's testimony, the probate court orally denied the Plea. The trial then proceeded with Heidi, Myra, and Bob testifying along with Comerica's witness.

Following the trial, the probate court entered an order denying Heidi's Plea and granting the Trustee's Petition. In the order, the probate court concluded that it had jurisdiction and that venue was proper; that Comerica administered the Goepp Trusts in accordance with the terms of the instruments and with Texas law; that Comerica is entitled to court settlement and release of liability as to the Goepp Trusts; that Heidi and Myra were each entitled to preferential distributions of $128,865.29 pursuant to the FSA; and that Bob's reimbursement requests are denied as "either barred by the Statute of Limitations" or "controlled by the FSA."

In this appeal, Bob challenges both the legal and factual sufficiency of the evidence supporting the amount for preferential distributions and the denial of his request for reimbursement. Heidi also appeals, challenging the probate court's denial of her Plea and the no liability ruling.

## DISCUSSION

### Jurisdiction

As a threshold matter, Heidi challenges the probate court's jurisdiction over the case, raising three arguments: the probate court lacked subject matter jurisdiction over the case because "a statutory probate court cannot take jurisdiction of an inter vivos trust" and "exclusive

3

jurisdiction is in District Court under Tex. Prop. Code Section 115 and Tex. Est. Code Chapter 32"; an Illinois court has exclusive jurisdiction by the express language of the Living Trust; and an Illinois court acquired dominant jurisdiction over the case thereby depriving the Texas probate court of jurisdiction.[2] We consider each argument in turn.

Heidi did not raise her first argument regarding the probate court's subject matter jurisdiction in her Plea. Nevertheless, "[s]ubject matter jurisdiction is an issue that may be raised for the first time on appeal." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). Although subsection 115.001(a) of the Texas Property Code grants a district court "original and exclusive jurisdiction over all proceedings by or against a trustee and all proceedings concerning trusts," that subsection is prefaced with "[e]xcept as provided by Subsection (d) of this section." Tex. Prop. Code § 115.001(a). Subsection (d)(1) states, "The jurisdiction of the district court is exclusive except for jurisdiction conferred by law on: (1) a statutory probate court[.]" *Id.* § 115.001(d)(1). And jurisdiction is conferred by law on a statutory probate court by section 32.006 of the Texas Estates Code: "In a county in which there is a statutory probate court, the statutory probate court has jurisdiction of" both "an action by or against a trustee" and "an action involving an intervivos trust, testamentary trust, or charitable trust." Tex. Est. Code § 32.006(1), (2); *see Johnson v. Johnson*, No. 04-19-00500-CV, 2020 WL 214762, at *3 (Tex. App.—San Antonio Jan. 15, 2020, no pet.) (mem. op.) (noting jurisdiction of "statutory probate courts is broad"). It is undisputed that the Goepp Trusts are intervivos trusts and that Comerica, as trustee, brought the underlying suit in a statutory probate

---

[2] These arguments were raised in four issues: whether the probate court committed reversible error by denying Heidi's Plea; whether the court erred by assuming subject matter jurisdiction over the Goepp Trusts; whether the court erred by applying Texas law in violation of the Goepp Trusts; and whether the trust lawsuit was ancillary to or related to any pending estate matter when filed.

court in Travis County. *See* Tex. Gov't Code § 25.2291(c) ("Travis County has one statutory probate court, the Probate Court No. 1 of Travis County."). Thus, in light of section 32.006 of the Texas Estates Code, section 115.001 of the Texas Property Code did not deprive the probate court of subject matter jurisdiction over the underlying case.[3]

In Heidi's next argument, she argues that an Illinois court has exclusive jurisdiction under section 10.16 of the Living Trust:

> 10.16 **Controlling Law.** The validity and effect of each trust and the construction of this instrument and of each trust shall be determined in accordance with the laws of Illinois. The original situs and original place of administration of each trust shall also be Illinois, but the situs and place of administration of any trust may be transferred at any time to any place the trustee determines to be for the best interests of the trust.

Contrary to Heidi's position in her appellate briefing, however, section 10.16 does not implicate the probate court's subject matter jurisdiction. As to section 10.16's first sentence, a "foreign

---

[3] In her fourth issue, Heidi asserts that the "trust matter is not 'incident to or ancillary to' any pending estate matter in probate court." Heidi argues that section 115.001(d) of the Texas Property Code "is limited to matters '*incident to an estate*' and apply only when a probate proceeding relating to such estate is actually '*pending*' in the probate court," citing *Baker v. Baker*, No. 02-18-00051-CV, 2018 WL 4224843, at *1–2 (Tex. App.—Fort Worth Sept. 6, 2018, no pet.) (mem. op.), and that "[t]o trigger a statutory probate court's exclusive subject-matter jurisdiction over a cause 'related to the probate proceeding,' a probate proceeding must be pending." But *Baker* concerned a statutory probate court's jurisdiction under section 32.005 of the Texas Estates Code, not section 32.006, and is therefore not applicable here. *See id.* (citing Tex. Est. Code § 32.005(a) (providing statutory probate court with "exclusive jurisdiction of all probate proceedings" and related causes of action unless its jurisdiction "is concurrent with the jurisdiction" of "any other court")). Section 32.006 concerns a statutory probate court's independent jurisdiction, not its jurisdiction over causes related to the probate proceeding. *See Lee v. Lee*, 528 S.W.3d 201, 213 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("Our conclusion that a statutory probate court has jurisdiction over 'an action involving an inter vivos trust, testamentary trust, or charitable trust' as unambiguously stated in Texas Estates Code section 32.006, is unaffected by the authorities Susan cites concerning proceedings 'appertaining to or incident to an estate.' The authorities on which Susan relies deal with conditions in which a court exercising original probate jurisdiction can exercise jurisdiction over related or ancillary matters; they do not address a statutory probate court's independent jurisdiction over trust actions.").

5

choice-of-law provision" does not prevent Texas courts from exercising jurisdiction over the case. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 598 (Tex. 2007); *see Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (noting "longstanding principle that subject-matter jurisdiction is a power that 'exists by operation of law only, and cannot be conferred upon any court by consent or waiver'" (quoting *Federal Underwriters Exch. v. Pugh*, 174 S.W.2d 598, 600 (Tex. 1943))). Regarding section 10.16's second sentence, Heidi asserts, without citing any authority, that "[t]he Texas Estates Code makes the situs of administration of the trust during the preceding four years the location for subject matter jurisdiction." Presumably, Heidi is referring to section 115.002(c) of the Texas Property Code, which provides that "the venue of an action under Section 115.001" when there is a corporate trustee shall be the county in which either "the situs of an administration of the trust is maintained or has been maintained at any time during the four-year period preceding the date the action is filed" or "any corporate trustee maintains its principal office in this state." Tex. Prop. Code § 115.002(c). But "[v]enue pertains solely to where a suit may be brought and is a different question from whether the court has 'jurisdiction of the property or thing in controversy,'" and "unlike subject-matter jurisdiction . . . venue may be waived if not challenged in due order and on a timely basis." *Gordon v. Jones*, 196 S.W.3d 376, 383 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (first quoting *National Life Co. v. Rice*, 167 S.W.2d 1021, 1024 (Tex. [Comm'n Op.] 1943); then citing Tex. R. Civ. P. 86(1); *Massey v. Columbus State Bank*, 35 S.W.3d 697, 700 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)). Because it is undisputed that Heidi filed an answer and that her attorney filed a general denial approximately six months before filing the Plea, Heidi waived any objections to the alleged improper venue. *See In re OSG Ship Mgmt., Inc.*, 514 S.W.3d 331, 337 (Tex. App.— Houston [14th Dist.] 2016, orig. proceeding) ("[U]nless venue is challenged by a motion to

6

transfer venue filed before or concurrently with the defendant's answer, any objection to venue is waived." (citing *Lui v. Cici Enters. L.P.*, No. 14-05-00827-CV, 2007 WL 43816, at \*2 (Tex. App.—Houston [14th Dist.] Jan. 9, 2007, no pet.) (mem. op.))); *see also* Tex. R. App. P. 33.1(a) (requiring as prerequisite to presenting complaint for appellate review that complaint was made to trial court by timely request, objection, or motion); Tex. R. Civ. P. 86(1) ("An objection to improper venue is waived if not made by a written motion filed prior to or concurrently with any other plea, pleading or motion except a special appearance motion provided for in Rule 120a.").

Turning to Heidi's dominant jurisdiction argument—the primary argument raised in her Plea—"[t]he general common law rule in Texas is that the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts." *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding) (quoting *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974)); *see In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (orig. proceeding) (per curiam) (noting that "filing a dilatory plea in abatement is the proper method for drawing a court's attention to another court's possible dominant jurisdiction"). Heidi argues that dominant jurisdiction applies because "[t]he Cook County [Illinois] Circuit Court has re-opened its prior filed 2014 case involving the same parties and trusts." However, dominant jurisdiction applies to suits filed in different counties within Texas; the doctrine "does not apply to suits filed in other states because 'every state is entirely sovereign and unrestricted in its powers.'" *In re Old Am. Cty. Mut. Fire Ins.*, No. 03-12-00588-CV, 2012 WL 6699052, at \*1 (Tex. App.—Austin Dec. 20, 2012, orig. proceeding) (mem. op.) (quoting *Ashton Grove L.C. v. Jackson Walker L.L.P.*, 366 S.W.3d 790, 794 (Tex. App.—Dallas 2012, no pet.)). Instead, states apply a "general rule" based on "state-to-state comity, which, while not a constitutional obligation, is 'a principle of mutual convenience whereby one state or jurisdiction will give

7

effect to the laws and judicial decisions of another'"; namely, "[w]hen a matter is first filed in another state, the general rule is that Texas courts stay the later-filed proceeding pending adjudication of the first suit." *In re AutoNation, Inc.*, 228 S.W.3d 663, 670 (Tex. 2007) (orig. proceeding) (quoting *Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex. 1986)). In this situation, "the proper course of action is for the first-filing party to seek a stay, rather than seeking relief through a plea in abatement," and "we should consider whether the later-filed case should be stayed under the doctrine of comity." *Old Am.*, 2012 WL 6699052, at *1–2. However, "the mere pendency of a previously filed action in one state does not, in itself, mandate abatement or dismissal in another state," *AutoNation*, 228 S.W.3d at 670, and "[b]eing voluntary and not obligatory, the application of comity vests in the sound discretion of the trial court," *Ashton Grove*, 366 S.W.3d at 794. We therefore "examine the pleadings filed in the cases and ask whether the trial court abused its discretion in refusing to grant the stay [in] the later-filed action" by making a decision "so arbitrary and unreasonable that it amount to a 'clear and prejudicial error of law'" or by "misappl[ying] the law to the facts." *Old Am.*, 2012 WL 6699052, at *2 (quoting *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding)).

Assuming Heidi's Plea requesting abatement based on dominant jurisdiction could be construed as a motion to stay based on comity, we conclude that the probate court did not abuse its discretion in denying the request for a stay. "To show its entitlement to a stay, the party must generally show 'that the two suits involve the same cause of action, concern the same subject matter, involve the same issues, and seek the same relief.'" *Id.* (quoting *Griffith v. Griffith*, 341 S.W.3d 43, 54 (Tex. App.—San Antonio 2011, no pet.)). Heidi's Plea referenced the following order as reopening the Cook County suit: "June 5, 2019 Order of Cook County, Illinois Court re-opening this case for dominant jurisdiction of the Goepp family trusts." But

8

Heidi did not attach the Cook County order to her Plea and admitted in her testimony that "it wasn't included in [the Plea]."[4] At trial, counsel for the parties disputed whether there was pending litigation in Cook County, Illinois, and when Bob's counsel stated that there had been a filing in Cook County the day before, Comerica's counsel argued that Comerica had not received any notice of any filing in Cook County. The probate court expressed confusion and asked whether Comerica's counsel would like to take Heidi on voir dire. On voir dire, Comerica's counsel asked whether Heidi had the document from the Illinois court. When Heidi tried to show a document on her telephone, Comerica's counsel responded that he needed to "see the document." And when Heidi requested to print the document, Comerica's counsel responded, "I don't think there is any way to print it" and "even if you printed it, it wouldn't be a certified document. It would be a copy of a purported certified copy." Heidi also testified that she and Bob had filed suit against Comerica with "Judge Brennan in Chicago" and that Judge Brennan "left [the case] open." But Comerica's counsel objected "to any testimony about what Judge Brennan did without seeing the certified document," and the probate court sustained the objection. Finally, when asked if she filed something in Cook County in the last six months, Heidi said "No" but "I know that something was filed. The contents of the filing, I do not know." On this record, we conclude that the probate court's denial of Heidi's request for a stay—to the extent her Plea could be construed as such—was not an abuse of discretion. *See id.*; *Ashton Grove*, 366 S.W.3d at 794.

---

[4] Although Heidi was acting pro se at trial, pro se litigants "are held to the same standard as parties represented by counsel to avoid giving unrepresented parties an advantage over represented parties." *Stewart v. Texas Health & Hum. Servs. Comm'n*, No. 03-09-00226-CV, 2010 WL 5019285, at \*1 n.1 (Tex. App.—Austin Dec. 9, 2010, no pet.) (mem. op.) (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978)).

Accordingly, we overrule Heidi's first four issues addressing the probate court's jurisdiction.

**No Liability Order**

In her fifth and final issue, Heidi argues that the probate court "abus[ed] [its] discretion in issuing an order of 'no liability' . . . to extinguish [Heidi's] claims for breach of trust and breach of fiduciary duty in violation of the law." Heidi does not challenge the sufficiency of the evidence supporting the order; rather, she argues that the probate court "cannot rule that Comerica . . . has no liability or attempt to adjudicate this claim, which would have a preclusive effect on further litigation elsewhere." Heidi's argument is not exactly clear. To the extent Heidi is challenging the order on the jurisdictional grounds raised in her first four issues, we have overruled those issues. And if Heidi is raising a nonjurisdictional ground to challenge the issuance of the "no liability" order, she did not preserve error as to this issue by making this complaint to the probate court and obtaining a ruling on the complaint. *See* Tex. R. App. P. 33.1(a). We therefore overrule Heidi's fifth and final issue.[5]

---

[5] In her appellate reply brief, Heidi raises for the first time arguments related to the Uniform Enforcement of Foreign Judgments Act, the Full Faith and Credit Clause of the United States Constitution, and the doctrine of res judicata, and she attaches various documents to her reply brief that were not included in the record. Because these arguments were not raised in her opening brief, we do not consider them. *See* Tex. R. App. P. 38.3 ("The appellant may file a reply brief addressing any matter in the appellee's brief."); *McFadden v. Olesky*, 517 S.W.3d 287, 293 n.3 (Tex. App.—Austin 2017, pet. denied) ("Ordinarily, an argument asserted for the first time in a reply brief is waived and need not be considered by an appellate court."). Nor do we consider the documents that were not properly presented to the probate court and included in the record on appeal. *See* Tex. R. App. P. 34.1, 38.1(g); *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892 (Tex. App.—Austin 2010, pet. denied) ("We are limited to the appellate record provided."); *Burke v. Insurance Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, pet. denied) (explaining that documents that are cited in brief and attached as appendices may not be considered by appellate courts if they are not formally included in record on appeal).

10

**Interest Calculations**

Having overruled Heidi's issues, we now turn to Bob's two appellate issues. In his first issue, Bob claims that the trial court "erred in ordering a distribution in the amount of $128,865.29 be made, each, to Heidi and Myra" because "[t]he only evidence to support any distribution was that such amount should be $126,572.88."

The FSA provides that "Heidi and Myra shall be entitled to preferential distributions upon Iraida's death from the Iraida Goepp Trust equivalent to the value of the Kilbourn [Property] appraisal" and that "[t]he preferential distributions shall also accrue simple interest of 3.5% from the date that the deed transferring the Kilbourn [Property] to [Bob] is executed until the date the preferential distributions are completed." It is undisputed on appeal that the principal amount for the preferential distributions was $560,000; that the interest rate was 3.5%; that the relevant time frame for interest accrual was February 10, 2015, through May 31, 2019; that on May 25, 2018, the balance of principal and interest had accrued to $624,438.36 ($64,438.36 in accrued interest and $560,000 as principal); and that on May 25, 2018, Comerica made a $500,000 payment from the estate trust to Myra and to Heidi as a partial payment.

At trial, Comerica submitted exhibit 5, which calculated a $126,572.88 total balance due as of May 31, 2019. Exhibit 5 applied the $500,000 partial payment made on May 25, 2018, to the principal alone and calculated interest going forward on the remaining $60,000 outstanding principal amount.[6] However, Myra's attorney cross examined Comerica's representative as to the calculations on exhibit 5, asking, "Isn't the normal procedure on a loan to

---

[6] Specifically, the exhibit calculated interest on the $60,000 principal amount from May 26, 2018, through May 31, 2019, for an additional $2,134.52, which equaled $66,572.88 in total interest due when combined with the outstanding interest of $64,438.36 as of May 26, 2018. Adding the total interest due to the remaining $60,000 principal balance created a $126,572.88 total balance due on May 31, 2019.

11

charge a payment against interest first?" Comerica's representative said she did not know if that is true. The probate court stated, "I can tell you from paying a mortgage that some of that is princip[al], some of that is interest." Myra's attorney continued, "So if you charge that $500,000 first to the earned interest at that point, would . . . it increase the amount that is due to Heidi and Myra?" Comerica's representative said that she believed so, that the calculation could be easily made, and that her estimate is that it would amount to "a few thousand" more for Myra and Heidi. At the close of trial, the probate court asked Comerica's attorney: "I would like one last exhibit . . . . And that is an exhibit from your client. Because they answered some questions to [Myra's attorney] that the[re] may be a different calculation as to what is owed if you take the payment made to interest first, princip[al] second." Comerica submitted exhibit 12; the exhibit is included in the reporter's record on appeal, and the appellate record does not indicate any objection to the exhibit. In exhibit 12, Comerica applied the $500,000 partial payment to pay off first the interest that had accrued as of May 25, 2018, and then the principal amount. Thus, the remaining principal amount for exhibit 12 is higher than on exhibit 5. Exhibit 12 then shows the calculated interest on the remaining principal amount from May 26, 2018, through May 31, 2019, and a total balance due on May 31, 2019, of $128,865.30.

After the probate court made the request for exhibit 12, Bob's attorney asked to address that point, stating, "That's not what the [FSA] says. It's not structured as a loan." The probate court asked, "Which way should it come?" Bob's attorney said, "The cheapest way to my client[.]" On appeal, however, Bob challenges only the legal and factual sufficiency of the evidence; he does not address how the FSA structures how a partial payment would apply to the preferential distribution. In its order, the probate court concluded that the FSA "required preferential distributions with interest to Heidi [] and Myra [] related to Kilbourn Property and

12

the remaining amount of unpaid preferential distributions (including accrued interest) as of May 31, 2019 are $128,865.29 to Heidi [] and $128,865.29 to Myra[.]" When, as here, no findings of fact or conclusions of law are filed or requested following a bench trial, it is implied that the trial court made all the necessary findings to support the judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). Because the appellate record includes the reporter's record and clerk's record, these implied findings are not conclusive and may be challenged on appeal for legal and factual sufficiency. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). We review sufficiency challenges under well-established standards of review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005) (describing standard for reviewing legal sufficiency challenges); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam) (describing standard for reviewing factual sufficiency challenges).

On appeal, Bob argues that "Comerica's Exhibit 12 reflects nothing more than a document with numbers" and that "[t]here is no testimony to support its accuracy." But exhibit 12 is not merely "a document with numbers"; it expressly lists the principal amount, the interest rate, the number of days for monthly time frames, and the interest due for each monthly time frame. And on appeal Bob does not identify any inaccuracies on exhibit 12. Additionally, exhibit 12 is consistent with the testimony of Comerica's representative that her estimate would be that the balance due to Myra and Heidi would be "a few thousand" more than the amount listed in exhibit 5. Accordingly, we conclude that exhibit 12 and the testimony of Comerica's representative constitute legally and factually sufficient evidence to support the probate court's judgment as to this issue and overrule Bob's first issue.

13

**Reimbursement Claim**

In his second issue, Bob challenges the legal and factual sufficiency of the evidence to support the denial of his "request for reimbursement of amounts that he expended on behalf of his mother and which were clearly reimbursable under the terms of the [FSA]." Section 11 of the FSA provides:

> 11. <u>Payment of Iraida's Care Expenses</u>. . . . Nothing in this Agreement changes the fact that John Crane, as guardian of Iraida Goepp's Estate, or Debbie Pearson, as guardian of Iraida Goepp's person, has the proper authority to make health-care decisions for Iraida Goepp, including changes to her care that may result in greater expenses. Any of Myra or Robert may pay incidental expenses relating to Iraida Goepp's care and submit those payments for reimbursements to the Guardian of the Estate or the Successors Trustee.

At trial, Bob submitted an exhibit requesting $31,272.32 for reimbursement and attaching various agreements, invoices, and copies of checks related to that reimbursement request. Comerica's representative testified that she saw this reimbursement request for the first time the day before trial and that she was never presented with any of the bills before the day of the hearing. She also testified that many of those charges were made before the FSA was executed in February 2014 and that most of the expenses concerned hyperbaric chamber treatment. When Comerica's counsel asked Bob whether Iraida received any of the hyperbaric chamber treatments, Bob responded, "I don't know." And Heidi asked Bob on cross examination, "Why didn't our mother receive the hyperbaric treatments?" Bob responded that the court made a ruling that "while I was still validly medical power of attorney that there could be no changes to her care." In its final order, the probate court ordered, "All other claims for reimbursement made by [Bob] at the hearing on June 6th, 2019, are either barred by the Statute of Limitations or are controlled by the [FSA] and are therefore DENIED."

As the party requesting affirmative relief, Bob bore the burden of proof as to his entitlement to reimbursement. *See TRO-X, L.P. v. Anadarko Petrol. Corp.*, 548 S.W.3d 458, 465–66 (Tex. 2018) (noting "well accepted postulate of the common law" that civil litigant asserting affirmative claim for relief has burden of proof (quoting *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 482 (Tex. 1984))). When, as here, the appellant is attacking the sufficiency of the evidence supporting an adverse implied finding on an issue for which it had the burden of proof, we sustain a legal sufficiency challenge if the appellant "demonstrate[s] on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue" and a factual sufficiency challenge if the appellant "demonstrate[s] on appeal that the adverse finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

We conclude that Bob did not meet his appellate burden. First, section 11 of the FSA provides that Bob "*may pay* incidental expenses" and "submit *those* payments for reimbursements." (Emphases added.) The FSA therefore authorizes future payments and reimbursement for those payments; it does not authorize reimbursement for payments already made at the time the FSA was signed.[7] Thus, there was sufficient evidence supporting the trial court's conclusion that Bob was not entitled to reimbursement for expenses paid prior to the FSA. Second, the payments must be "incidental expenses relating to Iraida Goepp's care." The remaining expenses were related to the hyperbaric chamber treatments. But there was sufficient evidence of a court ruling in place that prevented changes to Iraida's care to provide such

---

[7] Section 7 of the FSA provided for reimbursement of already paid "Trust expense[s]": "7. <u>Expense Reimbursement</u>. Bob, Myra and Heidi shall each receive $650,000 in Trust expense reimbursement and pre-death estate planning distributions from the Iraida Goepp Trust."

15

treatment and that Iraida did not receive any such care; thus, those payments were not "relat[ed] to Iraida Goepp's care." Accordingly, we overrule Bob's second issue.

## CONCLUSION

Having overruled Heidi's and Bob's issues on appeal, we affirm the probate court's final order.

_____
Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed: July 9, 2021

16